496 S.E.2d 242

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael DeWayne BOXLEY, Defendant Below, Appellant.**

**No. 23854.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1997.

Decided Nov. 21, 1997.

appeals. *See also Dewey v. Board of Zoning Appeals,* 185 W.Va. 578, 408 S.E.2d 330 (1991).

Jeff C. Woods, Melissa M. Robinson, Jackson & Kelly, Charleston, for Appellant.

William C. Forbes, Prosecuting Attorney In and For Kanawha County, Mary Beth

Kershner, Assistant Prosecuting Attorney, Charleston, for Appellee.

PER CURIAM: [1]

This case is before this Court upon an appeal from a final order of the Circuit Court of Kanawha County entered on November 20, 1995. The appellant, Michael D. Boxley, was convicted by a jury of the offense of murder in the first degree without a recommendation of mercy. On appeal, appellant contends that his statement to the police should have been suppressed. He also claims that the prosecution withheld exculpatory evidence. He cites as further error the trial court's voluntary manslaughter instruction. Finally, he asserts that the evidence was insufficient to support his conviction.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. For the reasons discussed below, appellant's conviction is affirmed.

I

Appellant was arrested on May 19, 1994, and charged with the stabbing death of Deanna Tolber. The evidence at trial showed that in the early morning hours of May 19, 1994, appellant went to the apartment of Trista Anderson in Charleston. Jason Brown was there and Deanna Tolber arrived later. All three decided to stay the rest of the night with Ms. Anderson.

While the men were sleeping, Ms. Tolber rummaged through their clothing looking for money. At approximately 8:00 a.m., Mr. Brown awoke and found his money missing. He argued with Ms. Tolber and Ms. Anderson and then woke up appellant. Mr. Brown told appellant that his money was gone and that he should "check his pockets." Appellant discovered that he was missing $200 and asked the women to return his money. When they did not respond, appel-

1. We point out that a per curiam opinion is not legal precedent. See Lieving v. Hadley, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

lant picked up a steak knife and waved it at Ms. Tolber, again demanding his money. The argument between appellant and Ms. Tolber escalated, and according to Ms. Anderson, appellant stabbed Ms. Tolber in the chest.

The police were called to Ms. Anderson's apartment around 8:20 a.m. by a neighbor, Sherry Napier. Ms. Napier told the police that she heard a commotion in the hallway that morning while she was getting her children ready for school. She looked out and saw two men. After returning from taking her children to school, Ms. Napier knocked on Ms. Anderson's door. As Ms. Anderson opened the door, Ms. Napier saw Ms. Tolber lying on the floor. Although Ms. Tolber was still alive when the police arrived, she died shortly thereafter of the stab wound to her chest. Initially, Ms. Anderson stated that she did not know who stabbed Ms. Tolber.[2] However, she later told the police that appellant was the culprit.

That afternoon, the police went to appellant's home to arrest him. Appellant was read his *Miranda* rights[3] at 2:45 p.m. Upon arrival at the police station, appellant was questioned by Detective James A. Rollins. Around 3:55 p.m., appellant gave a signed statement in which he stated that he remembered being at Ms. Anderson's apartment, that his money was missing, and that he started "swinging the knife." Appellant said that after that his mind "went blank," and he

did not remember anything else besides getting in a taxi to go home.[4]

After he gave the statement, appellant agreed to provide a second statement regarding another crime which he had witnessed previously. Thereafter, appellant was fingerprinted and photographed. The police walked appellant across the street to the magistrate around 6:00 p.m. During the walk, appellant was confronted by the media. His answers to some of the reporters' questions were recorded on videotape.[5]

Prior to trial, the appellant sought to have his statements to the police and the media suppressed. The trial court denied appellant's motions, and the statements were admitted into evidence over defendant's objections. Following a three-day trial, appellant was convicted of first degree murder without a recommendation of mercy as reflected in the final order.

## II

As his first assignment of error, appellant contends that the statements he gave to the police should have been suppressed. Appellant claims that after he was read his Miranda rights, he told Detective James A. Rollins and Detective Lloyd W. Brown that he did not want to talk to them. He asserts that his right to remain silent was violated when Detective Rollins continued to question

---

2. Ms. Anderson testified that she did not tell the police who stabbed Ms. Tolber when they first questioned her because she was scared.

3. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Appellant's statement reads, in pertinent part:

    [Detective Rollins]: Can you tell us what occurred this morning?
    [Appellant]: Yeah. Well, I don't know what time it was, but one of my friends, he stays where I stay at, at TRISTA's house and he woke up going off and I heard him go off so I got up and he said some money was gone out of his pocket and he told me to check my pocket so I did and my money was gone out of my pocket so first thing I did, I seen this knife laying on the table. I just picked it up and I asked them ladies who went in my pockets and took my money out about two times and no-

body would say nothing so I just started swinging the knife and after that, my mind went blank and I don't remember nothing else besides catching a cab off the hill to go home.

5. The audio to the videotape reflects the following exchange:

    Unknown news reporter: Did you do it?
    The [appellant]: Yeah, I did it.
    Unknown news reporter: Why did you do it?
    The [appellant]: I don't know.
    Ms. Mackin: Mr. Boxley, did you stab Dana [sic] Tolber?
    The [appellant]: I don't know Dana Tolber.
    Ms. Mackin: Did you stab someone?
    The [appellant]: Nah.
    Ms. Mackin: You just said you did it.
    The [appellant]: Yeah, I did, I did.
    Ms. Mackin: Do you regret it?
    The [appellant]: Yeah, in somewhat ways, yeah.

him and obtained his statement at the police station.[6]

■ Traditionally, we have given deference to the trial court's decision regarding voluntariness of a confession. *See* syl. pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). However, recently, we clarified our standard of review. In syllabus point 2 of *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994), we held:

> This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

■ When determining whether a waiver was made, there are three considerations: were the rights given in proper form and substance; did the appellant understand them; and did he waive them? *State v. Rissler*, 165 W.Va. 640, 646, 270 S.E.2d 778, 782 (1980). In this case, it is undisputed that appellant was properly informed of his Miranda rights.[7] Thus, the issue presented is whether appellant understood his rights and then waived them.

■ This Court has long since held, in accordance with United States Supreme Court decisions, that: "Once a person under interrogation has exercised the right to remain silent guaranteed by *W.Va. Const.* art. III § 5, and *U.S. Const.* amend. V, the police must scrupulously honor that privilege. The failure to do so renders subsequent statements inadmissible at trial." Syl. pt. 3, *Rissler*. *See also* syl. pt. 1, *State v. Woodson*, 181 W.Va. 325, 382 S.E.2d 519 (1989); syl. pt. 4, *Farley*.

■ Although appellant asserts that he invoked his right to remain silent, the only evidence he introduces to support this contention is his own testimony.[8] To the contrary, there is ample evidence to support the State's position that appellant did knowingly and voluntarily waive his rights. First, appellant signed a waiver of rights form prior to giving his signed statement. Although appellant takes issue with the fact that the wrong time was written on the Miranda rights form,[9] it is evident that he was presented with the waiver form when he first began to give his statement. The signed statement shows that appellant read and signed the statement of Miranda rights and waiver form in the presence of the notary public who witnessed and subscribed the statement.[10]

---

6. Both appellant and the State agree that although appellant's statement cannot be characterized as a confession, it is, nonetheless, incriminating. *See* note 4, *supra*. Accordingly, our previous holdings relating to confessions apply.

7. Detective Brown read appellant his rights in the car on the way to the police station.

8. Appellant emphasizes the fact that there were inconsistencies in the testimonies of Detective Rollins and Detective Brown. Detective Rollins testified that appellant waived his rights in the car and indicated he wanted to talk. Detective Brown testified that appellant never indicated he understood his rights, nor did he waive his rights in the detective's presence. Appellant testified that after he was read his rights, he told the detectives that he did not want to talk. Thus, the jury was presented with three versions of what happened following appellant's arrest. While the police officers may not have been the best witnesses, decisions regarding credibility are within the province of the jury. *See* syl. pt. 3,

*State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

9. Detective Rollins testified at the suppression hearing and at trial, that on the day of appellant's arrest, the battery in the watch he normally wore was dead. He put on a different watch that morning and did not notice that the time was wrong. On the Miranda rights form signed by appellant, Detective Rollins wrote 1358 as the time. He testified that the time was actually 1558, which was three minutes after appellant's statement began at 3:55 p.m. Those three minutes were used to obtain from the appellant an understanding of his rights and his signature on the Statement of Miranda Rights document.

10. Appellant's statement reads, in pertinent part:
    DET. ROLLINS:
    Q. MICHAEL, the Charleston Police Department is investigating an incident that occurred at 1311 Roseberry Circle on the 8th floor in TRISTA's apartment. Do you know or can you tell us what you know about that incident?

Secondly, there is no evidence that appellant was coerced into giving a statement. Nowhere in the statement does he give any indication that he does not want to talk with the police officers. In fact, appellant affirmed that the statement was of his own free will.[11] In addition, the appellant testified at trial that he chose to talk to Detective Rollins after he got to the police station. Therefore, we find that the trial court correctly determined that appellant's statement was given knowingly and voluntarily.

■ Alternatively, appellant asserts that his statement was inadmissible because he was not promptly presented to a magistrate in accordance with *W.Va.Code,* 62–1–5 [1965] and the *West Virginia Rules of Criminal Procedure.*[12] In syllabus point 6 of *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982), we held that: "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant." *See also* syl. pt. 2, *State v. McKenzie,* 197 W.Va. 429, 475 S.E.2d 521 (1996), *cert. denied,* — U.S. ——, 117 S.Ct. 529, 136 L.Ed.2d 415 (1996); syl. pt. 1, *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986).

■ In this case, appellant was arrested at 2:45 p.m. and his signed statement was taken at 3:55 p.m. We do not find the delay between appellant's arrest and his statement to the police unreasonable. Because appellant was arrested at his home, part of the time between his arrest and signed statement was consumed in transportation to police headquarters. In addition, Detective Rollins testified that he spent approximately twenty minutes completing some paperwork once they arrived at the station.[13] These are justifiable delays which cannot be counted for prompt presentment purposes. *See Persinger,* 169 W.Va. at 135–36, 286 S.E.2d at 270.

■ Likewise, the fact that appellant spent additional time at the police station before he was taken to a magistrate is of no consequence. We have held that: "The delay occasioned by reducing an oral confession to writing ordinarily does not count on the unreasonableness of the delay where a prompt presentment issue is involved." Syl. pt. 3, *Humphrey.* *See also* syl. pt. 4, *State v. Kilmer,* 190 W.Va. 617, 439 S.E.2d 881 (1993); syl. pt. 2, *State v. Hutcheson,* 177 W.Va. 391, 352 S.E.2d 143 (1986). Moreover, in syllabus point 4 of *Humphrey,* we explained further that: "Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule." *See also* syl. pt. 9, *State v. Collins,* 186 W.Va.

---

A. Yeah.
Q. First, do you recall when we picked you up on South Park Road, DET. L.W. Brown read from a card your Miranda rights?
A. Yeah.
Q. Did you understand each of those rights as he read them to you?
A. Yes, I did.
Q. Did you also indicate to him that you would like to talk to us about this incident?
A. Not at first, I didn't.
Q. Can you read over this and see if that's pretty close to what he read you? The Statement of Miranda Rights, 1 through 5 and the waiver of the rights?
A. Yeah.
Q. Can I get you to sign the bottom part there?
A. No response. (MR. BOXLEY SIGNED DOCUMENT AT THIS TIME)
Q. Do you understand that you are under arrest and not free to leave?
A. Yes, I do.
Q. Are you giving this statement of you own free will?

A. Yeah.
Q. Has there been any threats or promises made to you to obtain this statement?
A. Nah, man.

11. *See* note 10, *supra.*

12. *W.Va.R.Crim.P.* 5(a), provides, in pertinent part: "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made."

*W.Va.Code,* 62–1–5 [1965] contains similar language. That statute was amended in 1997, however, such amendment does not affect this appeal.

13. Appellant also testified at trial that Detective Rollins was not in the interrogation room for ten to twenty minutes after they arrived at the police station.

1, 409 S.E.2d 181 (1990); syl. pt. 2, *State v. Fortner,* 182 W.Va. 345, 387 S.E.2d 812 (1989). Although appellant did make a second statement to the police during this time, it concerned another unrelated crime he had witnessed. Therefore, we find that the appellant's statement was not excludable under prompt presentment principles. Accordingly, the admission of appellant's statement was proper.

As his next assignment of error, appellant contends that the State withheld exculpatory or potentially exculpatory evidence and other discoverable information. Specifically, appellant asserts that the prosecution withheld log sheets from C & H Taxi; a videotape of a media report; the identification of at least one other suspect; a police report, statements the police made to the media on May 19, 1994; copies of police procedures; and a chronology. Appellant contends that despite the trial court's specific order to disclose, the State withheld these items until the second day of trial.

In syllabus point 4 of *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982), we recognized that: "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." *See also* syl. pt. 3, *State v. Franklin,* 191 W.Va. 727, 448 S.E.2d 158 (1994); syl. pt. 1, *State v. James,* 186 W.Va. 173, 411 S.E.2d 692 (1991). In the instance where the prosecution fails to respond to a discovery motion, we have held that:

When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial

where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

Syl. pt. 5, *Hatfield, supra. See also* syl. pt. 3, *State v. Wheeler,* 187 W.Va. 379, 419 S.E.2d 447 (1992); syl. pt. 2, *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980).

In this case, the appellant has failed to show that any of the items he alleges the State withheld contain any exculpatory evidence. Likewise, the appellant has failed to demonstrate that he was prejudiced by the State's last minute disclosure. Accordingly, we find no merit to this assignment of error.

Appellant also contends that the trial court erred because it failed to include the word "anger" in its voluntary manslaughter instruction.[14] Appellant offered the following instruction: "If you believe from the evidence in this case beyond a reasonable doubt that the appellant intentionally, but not maliciously, and not premeditatedly or deliberately, killed the deceased under sudden excitement, 'anger,' or heat of passion, then you may find him guilty of Voluntary Manslaughter." Appellant states that although the trial court agreed to the instruction, when the instructions were read to the jury, the word "anger" was left out.[15]

We generally apply an abuse of discretion standard when asked to review a trial court's rejection or acceptance of a specific jury instruction. *State v. McGuire,* 200 W.Va. 823, 828, 490 S.E.2d 912, 917 (1997). *See also State v. Guthrie,* 194 W.Va. 657, 671 n. 12, 461 S.E.2d 163, 177 n. 12 (1995). The trial court formulation of the wording of jury instructions is given broad discretion. *McGuire,* 200 W.Va. at 828, 490 S.E.2d at 917.

---

14. Appellant argues that in *State v. Beegle,* 188 W.Va. 681, 425 S.E.2d 823 (1992) (per curiam) this Court clearly indicated that a killing which occurred as a result of "anger" required a verdict no higher than voluntary manslaughter. We disagree with appellant's interpretation of *Beegle.* Furthermore, we again caution that per curiam opinions are not legal precedent. *See* note 1, *supra.*

15. The trial court instructed the jury as follows: "If you believe from the evidence in this case beyond a reasonable doubt that the defendant intentionally, but not maliciously, and not premeditatedly or deliberately, killed the deceased under sudden excitement or heat of passion, then you may find him guilty of voluntary manslaughter."

■ In this case, we find no error with the trial court's voluntary manslaughter instruction. Recently, in syllabus point 3 of *McGuire,* we held: "Gross provocation and heat of passion are not essential elements of voluntary manslaughter, and therefore, they need not be proved by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter." Therefore, regardless of any agreement, the trial court's instruction was adequate because "anger" is not an essential element of voluntary manslaughter. Furthermore, we note that: "It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the Court." Syl. pt. 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966).

■ As his last assignment of error, appellant contends that the evidence presented at trial was insufficient to convict him. He asserts that at the most, the evidence supported a conviction of voluntary manslaughter. In *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), we established new standards for reviewing a challenge to the sufficiency of evidence to support a jury's verdict. In syllabus point 1 of *Guthrie,* we held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*See also* syl. pt. 1, *State v. Hughes,* 197 W.Va. 518, 476 S.E.2d 189 (1996); syl. pt. 5, *State v. DeGraw,* 196 W.Va. 261, 470 S.E.2d 215 (1996). We further advised that:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *Guthrie. See also,* syl. pt. 2, *Hughes;* syl. pt. 6, *DeGraw.*

■ In this case, the jury was presented with two versions of what happened on the morning of May 19, 1994, in Trista Anderson's apartment. While the State sought to prove that appellant was guilty, appellant advanced the theory that Ms. Anderson was the actual perpetrator. Although the jury heard testimony from various forensic experts and police officers, it is obvious that their verdict turned upon the testimony and credibility or lack thereof of Ms. Anderson, Mr. Brown, and the appellant.

Ms. Anderson testified that as the argument between the appellant and the victim escalated, appellant asked for a knife. When she did not respond, appellant went to the kitchen and took a knife out of a drawer. Ms. Anderson said she saw the appellant continue to argue with the victim and then stab her. Ms. Anderson further testified that within a few minutes of leaving the apartment, appellant returned and punched the victim in the face.[16]

Jason Brown, although reluctant, nonetheless, testified that he saw appellant and the victim argue and struggle. Mr. Brown's testimony differed from Ms. Anderson's in that

---

**16.** At trial, Irvin M. Sopher, M.D., Chief Medical Examiner for the State of West Virginia, testified that there was a bruise on the victim's left cheek.

he said that appellant picked up a knife that was laying on a coffee table. Mr. Brown stated that he did not actually see appellant stab the victim, but he did hear a loud thump. At that point, Mr. Brown left the apartment telling appellant to come with him. Mr. Brown said he remained in the elevator while appellant went back to the apartment for a couple of minutes.

Appellant also testified at trial. Consistent with his statement to the police, appellant testified that he remembered swinging a knife, but then his mind "went blank." [17] In addition to his testimony, during the State's case, appellant's statement to the police was read and his videotape statement to the media was viewed. After reviewing the record in favor, of the prosecution, we find that the evidence was sufficient such that a reasonable trier of fact could find appellant guilty of first degree murder beyond a reasonable doubt.

Based upon all of the above, the final order of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

**17.** *See* note 4, *supra.*