588 S.E.2d 156

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**DAVID D. W., Defendant Below, Appellant.**

No. 30786.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2003.

Decided April 21, 2003.

Maynard, J., filed a concurring opinion.

Albright, J., filed a concurring opinion in which Starcher, C.J., joined.

Jack L. Hickok, Esq., Paul R. Stone, Esq., West Virginia Public Defender Services, Charleston, West Virginia, Attorneys for Appellant.

Darrell V. McGraw, Jr. Esq., Attorney General, Silas B. Taylor, Esq., Senior Deputy Attorney General, Heather D. Foster, Esq., Assistant Attorney General, Charleston, for Appellee.

**PER CURIAM:**

This case is before this Court upon appeal of a final order of the Circuit Court of Jackson County entered on December 15, 2000. Pursuant to that order, the appellant and defendant below, David D. W.,[1] was sentenced to imprisonment in the penitentiary for a period of 1,140 to 2,660 years for his convictions of 38 counts of first degree sexual assault; 38 counts of incest; 38 counts of sexual abuse by a parent, guardian, or custodian; and 38 counts of first degree sexual abuse. In this appeal, the appellant presents several assignments of error. Specifically, he contends that: (1) his case was improperly presented to the grand jury; (2) the indictment was insufficient; (3) the statement he gave to the police was involuntary and should have been suppressed; (4) a prospective juror should have been excused for cause; (5) the evidence was insufficient and did not support 152 convictions; and (6) his sentences are disproportionate to the offenses charged and constitute cruel and unusual punishment.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed, in part, and reversed, in part, and this case is remanded to the circuit court for resentencing.

## I.

## FACTS

The appellant was charged with first degree sexual assault, incest, sexual abuse by a parent, guardian, or custodian, and first degree sexual abuse in a 206–count indictment returned by a grand jury in Jackson County, West Virginia, in June 2000. The offenses allegedly occurred between January 1998 and January 2000, and involved the appellant's daughter and youngest son.[2] The appellant moved to Jackson County with his two sons in November 1997.[3] He had previously lived in Alaska where his wife and daughter remained. Sometime in 1998, the appellant's wife and daughter came to West Virginia. After a two-week stay, the appellant's wife returned to Alaska. The appellant's daughter stayed with him. Subsequently, the appellant divorced his wife. He was granted legal custody of his children.

The state police began investigating the appellant in February 2000, after his babysitter reported that she suspected he was sexually abusing his children. On February 9, 2000, the appellant went to the Ripley, West Virginia detachment of the state police and gave an inculpatory and incriminating statement.[4] After further investigation, the State sought and obtained the indictment. The investigating officer, Trooper Bowles, was the only witness to appear before the grand jury.

The appellant was tried before a jury on November 28, 29, and 30, 2000. He was convicted of 38 counts of first degree sexual assault for which he received consecutive sentences of 15 to 35 years for each count; 38 counts of incest for which he received consecutive sentences of 5 to 15 years for each count; 38 counts of sexual abuse by a parent, guardian, or custodian, for which he

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303, n. 1, 387 S.E.2d 537, 538, n. 1 (1989).

2. The indictment contained 200 counts concerning the appellant's daughter and six counts concerning the appellant's youngest son. The State did not pursue the six counts involving the appel-

lant's son. When the offenses allegedly began, the appellant's daughter was seven years old and his youngest son was four years old.

3. None of the charges in this case concern the appellant's oldest son who is autistic.

4. The appellant went to the police department at the request of the investigating police officer.

received consecutive sentences of 10 to 20 years for each count; and 38 counts of first degree sexual abuse for which he received consecutive sentences of 1 to 5 years for each count. The court ordered that the sentences for first degree sexual assault, incest, and sexual abuse by a parent, guardian or custodian be served consecutively while the sentences for first degree sexual abuse be served concurrently with the sentences for sexual abuse by a parent, guardian, or custodian. In sum, the appellant was sentenced to a total of 1,140 years to 2,660 years in the penitentiary. The final order was entered on December 15, 2000, and this appeal followed.

## II.

### STANDARD OF REVIEW

█ As set forth above, the appellant has presented several assignments of error. Since the alleged errors concern different principles of law, the applicable standards of review will be incorporated into the discussion of each issue. We would note, however, that " '[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.' Syllabus point 3, *State v. Sprigg*, 103 W.Va. 404, 137 S.E. 746 (1927)." Syllabus Point 1, *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998).

## III.

### DISCUSSION

#### A. Presentation of the Case to the Grand Jury

█ The appellant first claims that he was prejudiced by the State's presentment of his case to the grand jury. Trooper Bowles was the only witness who appeared before the grand jury. He summarized the statements the appellant and the victims gave to the police. The appellant asserts that it was improper for the grand jury to indict him based solely on Trooper Bowles' interpretation of these statements.

█ This Court has long since held that "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syllabus, *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977).

'Generally speaking, the finding by the grand jury that the evidence is sufficient is not subject to judicial review.' I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* Grand Jury and Indictments I–651 (2d ed.1993). Cases are legion supporting the proposition that a defendant may not challenge a facially valid indictment returned by a legally constituted grand jury on the basis that the evidence presented to the grand jury was legally insufficient. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

This Court reviews indictments only for constitutional error and prosecutorial misconduct.

*State v. Adams*, 193 W.Va. 277, 284, 456 S.E.2d 4, 11 (1995). Since the appellant has not alleged any constitutional error or prosecutorial misconduct, we find no merit to this assignment of error.

#### B. Sufficiency of the Indictment

█ The appellant next argues that the indictment returned by the Jackson County grand jury was insufficient. He contends that the indictment was not plain, concise, or definite. In addition, he asserts that the number of charges was determined arbitrarily. The appellant says that as a result, he was not able to adequately prepare a defense.

█ "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syllabus Point 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). This Court has held that, "An indictment for a statutory offense is sufficient if, in charging

the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syllabus Point 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983). In this case, the indictment substantially followed the language of the statutes under which the appellant was charged. Thus, the appellant was informed of the nature of the offenses he allegedly committed, the statutes he allegedly violated, and the manner in which he allegedly violated said statutes.

The appellant acknowledges that he was informed of the statutes he allegedly violated, but claims he simply could not defend himself against the sheer number of charges without any particulars. He complains about the lack of specificity concerning when the alleged offenses occurred. He also asserts that it would be impossible for him to plead his convictions as a bar to a later prosecution, since the State could draft a new indictment alleging that the same offenses occurred on one of the days of the month not alleged in the previous indictment. We disagree.

W.Va.Code § 62–2–10 (1923) provides that, "No indictment or other accusation shall be quashed or deemed invalid ... for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" Clearly, time is not an element of the offenses with which the appellant was charged. *See State ex rel. State v. Reed*, 204 W.Va. 520, 523, 514 S.E.2d 171, 174 (1999). Thus, there was no requirement that the indictment in this case specify exactly when the alleged offenses occurred. Moreover, this Court has explained that "[a] conviction under an indictment charged, though the proof was at variance regarding immaterial dates, precludes a subsequent indictment on the exact same material facts contained in the original indictment." *Id.*, 204 W.Va. at 524, 514 S.E.2d at 175. Accordingly, we find no merit to this assignment of error.

**C. Admissibility of Appellant's Statement**

■ The appellant also claims that the statement he gave to the police was involuntary and should have been suppressed. The appellant says that he was asked to come to the Ripley Police Department in the middle of the night.[5] He was informed that he was under investigation for sexually abusing his children, and thus, he feared that he might lose custody of them. Upon being placed in a room with an armed state trooper, he became very emotional and gave disjointed answers to many of the questions he was asked. He asserts that given these circumstances, it cannot be said that his statement was given voluntarily.

■ In recent years, this Court has clarified the standard of review applicable to a trial court's decision regarding the voluntariness of a confession. In Syllabus Point 1 of *State v. Boxley*, 201 W.Va. 292, 496 S.E.2d 242 (1997), we explained that:

"This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions." Syl. pt. 2, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994).

The record in this case shows that the trial court held a suppression hearing on November 15, 2000, during which Trooper Bowles testified about the circumstances surrounding the recording of the appellant's statement. At the end of the hearing, the trial court determined that the appellant's statement was given freely and voluntarily and, therefore, would be admissible at trial.

■ Having reviewed the transcript of the suppression hearing and other relevant parts of the record including the statement at issue, we also find that the appellant's statement was given voluntarily. The appel-

**5.** The appellant arrived at the Ripley Police Department around 11:30 p.m. on February 8, 2000. His statement was recorded on February 9, 2000, beginning at 3:35 a.m. and ending at 4:21 a.m.

lant was fully informed of his *Miranda*[6] rights, and he signed the *Miranda* rights form indicating that he understood and waived each of his rights. The appellant knew that he was free to end the interview and leave at any time, yet he chose to complete his statement. There is no evidence in the record indicating that the appellant was coerced into giving a statement or was promised leniency for his cooperation. Furthermore, there is no evidence that the appellant was under the influence of drugs or alcohol when he gave his statement. Accordingly, we find that the appellant's statement was voluntary. Therefore, the circuit court did not err by refusing to suppress the appellant's statement.[7]

### D. Qualification of the Jury

The appellant next contends that the circuit court erred by not excusing one prospective juror for cause despite his objection while excusing for cause another prospective juror at the State's request. During *voir dire* of the jury panel, one prospective juror, Patsy Morris, revealed that her son-in-law is a state trooper in Wood County, West Virginia. More significantly, Ms. Morris stated that Trooper Bowles, the State's primary witness in this case, performed the background check for her son-in-law's admission to the state police academy. She further indicated that she believed her son-in-law and Trooper Bowles are friends. The appellant claims that Ms. Morris' answers during *voir dire* showed that she had a favorable opinion of Trooper Bowles, and therefore, she should have been excused for cause from the jury panel.[8]

The appellant further contends that another prospective juror, Victoria Babik,

should not have been removed from the panel. Ms. Babik disclosed that her husband had entered a guilty plea to a federal charge. She stated that she believed that her husband was "railroaded" by law enforcement, and consequently, she was excused for cause from the jury panel upon the State's motion. The appellant claims that the circuit court abused its discretion in ruling upon the motions to dismiss these prospective jurors from the jury panel.

In *State v. Miller, supra,* 197 W.Va. at 600–01, 476 S.E.2d at 547–48, this Court explained that:

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

In Syllabus Point 6 of *Miller,* this Court held that:

> The challenging party bears the burden of persuading the trial court that the juror is partial and subject to being excused for caus[e]. An appellate court only should interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias only when it is left with a clear and definite impression that a prospective juror would be unable faithfully and impartially to apply the law.

"The relevant test for determining whether a juror is biased is 'whether the juror[] . . . had such fixed opinion that [he or she] could not judge impartially the guilt of

---

**6.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** The appellant also argues that the trial court erred by allowing the jury to hear the tape recording of his statement because some portions thereof are inaudible. He also contends that the transcript of the statement was inaccurate and unreliable and should not have been admitted into evidence. Having reviewed the entire record, we are unable to find that the appellant made objections of this nature before, during, or after the trial. The appellant's objection with

regard to the admission of his statement into evidence was limited to his contention that it was not voluntary. Thus, we find that the appellant waived appellate review of this issue. As we explained in Syllabus Point 4 of *State v. Browning,* 199 W.Va. 417, 485 S.E.2d 1 (1997), "This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record."

**8.** Ms. Morris did not serve as a member of the jury in this case.

the defendant.'" *Id.,* 197 W.Va. at 605, 476 S.E.2d at 552, *quoting Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.E.2d 847, 856 (1984). In other words, "our concern is whether the juror holds a particular belief or opinion that prevents or substantially impairs the performance of his or her duties as a juror in accordance with the instructions of the trial court and the jurors oath." *Id.,* 197 W.Va. at 605, 476 S.E.2d at 552. Since the trial court is able to observe the demeanor of prospective jurors and assess their credibility, it is in the best position to make the determination of whether a potential juror is biased.

Having reviewed the *voir dire* of these prospective jury members, we are unable to find that the circuit court abused its discretion in determining whether these jurors were qualified to serve on the jury. Ms. Morris indicated that her judgment with regard to Trooper Bowles' credibility would not be affected by the fact he had helped a member of her family gain admission to the police academy. She simply did not express any bias that warranted her removal from the jury panel. By contrast, it is evident that Ms. Babik would not have been impartial had she been allowed to serve on the jury. Ms. Babik essentially stated that she did not believe that sworn testimony by itself was sufficient evidence upon which to base a conviction. Thus, the record supports the trial court's rulings, and we find no merit to this assignment of error.

### E. Sufficiency of the Evidence

The appellant next contends that the evidence presented was manifestly insufficient to convict him of 152 felonies consisting of four different sexual offenses. He points out that there was no medical evidence that showed that the victim had been subjected to sexual intercourse, sexual intrusion, or sexual contact. He further asserts that the evidence regarding how many times the offenses occurred was speculative. He maintains that even when the evidence is considered in the light most favorable to the State, the evidence does not support 152 convictions.

In Syllabus Point 3 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court stated that:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

This Court also explained in Syllabus Point 1 of *Guthrie* that:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

As set forth above, the appellant essentially argues that the evidence was insufficient to support his convictions for two reasons. First, he claims that there was no evidence that sexual intercourse, sexual intrusion, or sexual contact occurred, and thus, the State did not prove all of the elements of the offenses with which he was charged. Although there was no medical evidence establishing that the victim had been sexually assaulted,[9] the victim did testify that sexual

9. We note that there was testimony that the

absence of medical evidence in pediatric sexual

intercourse, sexual intrusion, and sexual contact occurred. This Court has held that, " 'A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syllabus Point 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." Syllabus Point 12, *State v. George W.H.*, 190 W.Va. 558, 439 S.E.2d 423 (1993). Obviously, the jury found the victim's testimony in this case to be credible. Also, it is likely that the jury found that the appellant's recorded statement corroborated the victim's testimony. Thus, we find no merit to the appellant's contention that the State failed to prove that sexual intercourse, sexual intrusion, and sexual contact occurred.

We also find no merit to the appellant's contention that the evidence with regard to how often the offenses occurred was speculative. The State alleged that each of the offenses occurred twice a month for a period of 25 months. At trial, the victim testified that the offenses began when she moved to West Virginia and occurred "almost every day." In his recorded statement which was presented to the jury, the appellant told the police that "sometimes it[']s once a month, sometime twice, sometimes we go, sometimes two months and nothing[.]" Also, the appellant indicated that the last offense occurred a week and half before he gave his statement to the police.

It is apparent that the jury believed the victim's testimony and concluded that the offenses happened more often than the appellant admitted. While actual dates and times were never established, as we explained above, such evidence is not required. Moreover, in this type of case, the victim's testimony is frequently the only evidence available concerning when the alleged offense occurred. Therefore, having reviewed the testimony, we do not believe that the evidence with respect to how often the offenses occurred was insufficient. Rather, we find that when the evidence is considered in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offenses with which the ap-

assault cases is not uncommon.

pellant was charged proven beyond a reasonable doubt.

### F. Sentencing

■ Finally, the appellant claims that the sentences imposed upon him by the trial court are disproportionate to the offenses charged and constitute cruel and unusual punishment. The appellant acknowledges this Court's reluctance to intervene when sentences are within legislatively prescribed limits, but contends that sentences imposed upon him are "shocking" and constitute an abuse of the trial court's discretion. We agree.

■ In Syllabus Point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), this Court observed that, "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.' " This Court also recognized that, "A criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution." Syllabus Point 7, *Vance.*

Historically, this Court has declined to intervene in cases where judicially imposed sentences are within legislatively prescribed limits. *State v. Cooper*, 172 W.Va. 266, 271, 304 S.E.2d 851, 855 (1983). In fact, this Court has held that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syllabus Point 4, *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981). Yet, this Court has also stated that "when our sensibilities are affronted and proportional principles ignored, there is an abuse of discretion that must be corrected." *Cooper*, 172 W.Va. at 271, 304 S.E.2d at 856.

In determining whether a sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, two tests are employed.

> The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test[.]

*Id.*, 172 W.Va. at 272, 304 S.E.2d at 857. The objective test was set forth in Syllabus Point 5 of *Wanstreet:*

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

In this instance, we do not need to look beyond the first test. We find the sentences imposed upon the appellant in this case so offensive that they shock the conscience of this Court. By ordering the appellant to serve the majority of his sentences consecutively, the trial court effectively imposed multiple life sentences upon him. Although the offenses committed by the appellant are heinous and repulsive, the trial court's sentencing order cannot be upheld.

This Court is certainly mindful of the fact that the sentences imposed by the trial court were within the statutory limits. Furthermore, the trial court's decision to make the sentences consecutive as opposed to concurrent was authorized by statute. *See* W.Va. Code § 61–11–21 (1923). Nonetheless, excessive penalties, even if authorized by statute, cannot transgress the proportionality principle of Article III, Section 5 of the West Virginia Constitution. By imposing a total sentence of 1,140 years to 2,660 years in prison upon the appellant in this case, the trial court violated the proportionality princi-

ple and abused its discretion. Therefore, we remand this case to the trial court for resentencing within its discretion.

### IV.

### CONCLUSION

For the reasons set forth above, the appellant's convictions are affirmed. However, the sentences imposed upon the appellant are reversed, and this case is remanded to the Circuit Court of Jackson County for resentencing consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.

Chief Justice STARCHER and Justices MAYNARD and ALBRIGHT concur and reserve the right to file concurring opinions.

MAYNARD, Justice, concurring:

I concur with the majority's decision to remand this case for resentencing. While I agree with the majority's determination that a sentence of 1,440 to 2,660 years constitutes cruel and unusual punishment, I also believe the defendant is a very dangerous sex offender who poses a clear and present danger to society in general, and to children in particular, and he will similarly be a very real threat to children if he is ever released in the future. In fact, in my view, he should never be released. This defendant committed 152 sexual offenses against his seven-year-old child. His actions were heinous and revolting to say the least and deserve the most serious punishment.

This case illustrates the difficulty in sentencing a defendant who has committed multiple serious offenses. In such cases, there is a great temptation to make a strong statement about how horrible the crimes are by imposing an extremely ·long or draconian sentence. For example, suppose you are the judge and you have before you a drunk driver with previous DUI convictions and a revoked driver's license. One afternoon, while drinking and driving yet again, he collides with a loaded school bus. A fiery crash ensues and forty children are burned to death. If you are the sentencing judge, how do you punish this driver? The sentence for

driving under the influence and causing a death in West Virginia is one to ten years in prison. W.Va.Code § 17C–5–2 (2001). Do you impose upon him forty concurrent sentences of one to ten years or do you give him forty consecutive sentences of one to ten years? How about twenty consecutive sentences of one to ten years? Given the number of offenses and the harm, what is the appropriate sentence? What if, on the other hand, the driver has never been in trouble before, is a leader in his community and church, and this is his first DUI? Should that make a difference? How do you fairly punish him and also meet society's need for justice? These are truly difficult and very troubling problems for judges at all levels.

By statute and case law, these decisions are wisely left to the sound discretion of the trial judge, and frankly, I do not like to tamper with that discretion. In fact, I believe that an appellate court should strive to uphold discretionary rulings made by trial judges and avoid in almost every case tampering with that discretion. Nonetheless, the sentence imposed upon the defendant in this case shocks the conscience and simply cannot stand. Therefore, I believe that the majority's decision to remand for resentencing is appropriate and correct. However, I would not be shocked if the defendant is given a combination of sentences approximating life in prison when he is resentenced, not just to punish him but to protect society. On remand, if I were the sentencing judge in this case, I would impose a life sentence on this individual, not to send a message or for retribution, but to protect children and the public from the defendant and given the extreme nature of the harm inflicted on the child victim in this case, the large number of felony offenses he has committed, and the certainty that this defendant will be a repeat and persistent offender if he is ever released.

Accordingly, for the reasons set forth above, I must reluctantly concur with the majority's decision in this case.

ALBRIGHT, Justice, concurring:

I concur with the majority decision to remand this case for resentencing. I am content to leave to the discretion of the new sentencing judge the determination of an appropriate sentence after suitable review of the nature and circumstances of the crime, the victims' statements, the presentencing report information, and any elocution by the defendant or any other information properly submitted on his behalf.

In my view, members of this Court should not state their opinion on a proper sentence in this or any other case, absent having reason to consider all of the factors bearing on an appropriate sentence as outlined above. We are, after all, an appellate court, not a trial court assigned to make sentencing decisions.

Finally, I would note that the members of this Court do not have before them any specific information from which we could gauge this defendant's likelihood of committing additional offenses. With respect to the specific offenses of which this defendant has been found guilty, I believe this Court lacks any information other than anecdotal, stereotypical conclusion upon which to reach a conclusion regarding possible recidivist conduct. Clearly, in the first instance the examination of that issue is for the trial court, based upon at least reasonably reliable information.

Accordingly, I concur in the judgment reached but disassociate myself from any comments which might be seen as suggesting to the sentencing judge how he might exercise his discretion. I am authorized to state that Chief Justice Starcher joins in this concurring opinion.