# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Steven T. Adkins,**
**Petitioner Below, Petitioner**

**FILED**

May 30, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs) No. 13-0753** (Cabell County 09-C-614)

**David Ballard, Warden, Mount Olive Correctional**
**Complex, Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven T. Adkins, by counsel L. Victor Navy, appeals the Circuit Court of Cabell County's "Amended Order Denying Habeas Corpus Petition" entered on April 2, 2013. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Derek Austin Knopp, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual Background and Procedural History

In 2002, petitioner was indicted on one count of kidnapping and four counts of first degree sexual assault. The indictment stemmed from an incident in November of 2001, when two off-duty Huntington police officers saw petitioner's truck parked about fifteen feet from James River Road. They saw petitioner bent over in the front of the truck and stopped to investigate. They found petitioner and Melinda Davis, a fifty-year-old female, engaged in a sexual act that appeared to be violent in nature. They arrested petitioner and took Ms. Davis to an area emergency room for examination. Ms. Davis's injuries consisted of swelling in her left wrist and pain in her hand and neck.

Petitioner made a statement to the police. He admitted to a long-standing dependence on alcohol and stated that Ms. Davis gave him crack cocaine that he smoked prior to arriving at James River Road. He contended that the sexual acts with Ms. Davis were consensual. However, when Ms. Davis told him that she wanted to stop the sexual activity, petitioner became angry and

1

began choking her as she tried to get away.[1] Petitioner's statement also indicates that Ms. Davis said to him, "Don't kill me" after she said that she no longer wanted to have sex.

Following a jury trial in May of 2003, petitioner was convicted of kidnapping and three counts of second degree sexual assault. He was acquitted on the remaining sexual assault count. The circuit court sentenced petitioner to not less than three nor more than ten years in the penitentiary on the kidnapping conviction, and not less than ten nor more than twenty-five years on two second degree sexual assault convictions (Counts II and III), to run consecutively. The court sentenced petitioner to not less than ten nor more than twenty-five years on the remaining second degree sexual assault conviction (Count IV), to run concurrently with the other three convictions. The petitioner's effective sentence was twenty-three to sixty years in the penitentiary.

Thereafter, petitioner filed a motion pursuant to Rule 33 of the West Virginia Rules of Criminal Procedure, requesting a new trial on the basis of newly discovered evidence. Specifically, petitioner alleged that the jury foreman was the president of the Fraternal Order of Police ("F.O.P.") Auxiliary, a fact previously undisclosed to either petitioner or his counsel. The circuit court held a hearing on petitioner's motion on June 6, 2006, denied the motion, and resentenced petitioner for purposes of appeal. Petitioner filed a direct appeal to this Court, which was refused on or about June 8, 2007.

On or about July 21, 2009, petitioner filed a pro se petition for writ of habeas corpus in the circuit court. In October of 2009, he was appointed counsel, who filed an amended petition on or about July 1, 2011, raising the following issues: (1) the State failed to promptly present petitioner before a magistrate following his arrest and prior to taking a statement; (2) the court should have suppressed his statement because it was given under threat of violence by the police and was not recorded; (3) the court erred in refusing his proposed instruction that would have required the jury to disregard his statement if it was the result of physical or mental coercion; (4) the court failed to conduct a proper voir dire examination of the jury panel, which resulted in the president of the Fraternal Order of Police being the foreman; (5) the court erred by not granting a new trial on the basis of alleged misconduct by the juror with ties to the Fraternal Order of Police; and (6) petitioner did not receive effective assistance of counsel.

On April 2, 2013, without a hearing, the circuit court denied the petition for writ of habeas corpus, with prejudice. This appeal followed.

**Discussion**

We review a circuit court order denying a habeas corpus petition under the following standard:

---

[1]Petitioner contends on appeal that he did not choke Ms. Davis. He alleges that he was forced by the police officer to include this in his statement because the officer said he witnessed the choking and would testify to it.

2

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner raises eight assignments of error, the first three of which challenge the admission of his statement to the police. First, he argues that his statement should have been suppressed because he was not promptly presented to the magistrate following his arrest. West Virginia Code § 62-1-5(a)(1) provides that "[a]n officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made." Syllabus Point 1 of *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984), states that "'[t]he delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), as amended."

The record in the present case reflects that petitioner was arrested around 2:20 p.m., signed *Miranda* waiver forms at 3:56 p.m. and 4:02 p.m., and signed his statement at 5:24 p.m. Petitioner asserts that he was taken to the magistrate "hours later." In addition, petitioner states that the officers originally charged him with attempted murder and told him they would drop that charge if he gave a statement.[2] Petitioner argues that there was no reason for the delay in presenting petitioner to the magistrate except to obtain a statement.

Upon our review of the record, we do not agree that the alleged delay in presenting petitioner to the magistrate required suppression of his statement. "'Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule.' Syl. pt. 4, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986)." Syl. Pt. 2, *State v. Boxley,* 201 W.Va. 292, 496 S.E.2d 242 (1997). We believe the circuit court properly concluded that, without further information, it is unclear whether the delay was justifiable due to logistics, transport, or other issues. Petitioner's allegation, without more, that it was not until hours later that he was taken to the magistrate is not sufficient to require suppression of his statement.

Second, petitioner argues that his statement was involuntary because (1) it was procured as a result of the officer's threats and coercion, and (2) petitioner was under the influence of drugs and alcohol at the time he gave the statement. Petitioner asserts that the same officer who took his statement threatened to shoot him and kicked him in the ribs at the scene of the assault. Petitioner asserts that he gave the statement because he was scared and intimidated. Additionally,

---

[2]It is true that petitioner was originally charged with attempted murder according to the waiver form. The officer denied making any promises in exchange for a statement.

3

petitioner alleges that the officer forced him to admit that he choked Ms. Davis because the officer said he saw it and would testify to it. Lastly, petitioner states that he had been drinking and smoked crack just prior to the incident and was still intoxicated at the police station when he gave his statement.

We reject petitioner's second assignment of error that his statement was not voluntarily made. In the present case, the officers had to yell at petitioner with guns drawn before petitioner relented in his assault of Ms. Davis. After petitioner released her, he did not comply with the officer's commands to get on the ground and move his hands away from his body, resulting in the officer kicking petitioner to see if he had a gun. "[T]he question is whether [the alleged threats] directly produced the confession." *State v. Hall,* 179 W.Va. 398, 401, 369 S.E.2d 701, 704 (1988). There is simply no evidence that, at the police station, anyone threatened or was violent toward petitioner. Furthermore, the officer testified that petitioner was coherent and did not appear to be under the influence of drugs and alcohol while at the station. "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or against the weight of the evidence." Syl. Pt. 7, *State v. Hickman,* 175 W.Va. 709, 338 S.E.2d 188 (1985) (citations omitted). We find no error in the circuit court's conclusion that petitioner's statement was voluntary.

Petitioner's third challenge to the admission of his statement is that the police had the ability and equipment to videotape his interrogation, but failed to do so. Petitioner argues that although the officer testified that he believes subjects speak more freely when not being recorded, this Court has declared that recording a statement in a place of detention is a "wiser course" of action. *See State v. Kilmer,* 190 W.Va. 617, 629, 439 S.E.2d 881, 893 (1993). Notwithstanding our statement in *Kilmer*, the circuit court was correct to conclude that there is no constitutional requirement that officers record statements given to them by suspects. *Id.* at 629, 439 S.E.2d at 893 ("[W]e decline to expand the Due Process Clause of the West Virginia Constitution, Article III, § 10, to encompass a duty that police electronically record the custodial interrogation of an accused.").

Fourth, petitioner argues that the trial court erred when it refused to give petitioner's proposed instruction that required the jury to disregard his statement if it were the result of physical or mental coercion. Petitioner proposed the following instruction:

> If you believe the statements given by the Defendant to law enforcement, whether true or false, were the result of physical or mental coercion, you must disregard the evidence of the statements in making your decision as to his guilt or innocence.

The trial court instead gave an instruction that read:

> The Court further instructs the jury that if you do not believe from the evidence in this case that the State of West Virginia has proven by a preponderance of the evidence that the Defendant made his statement freely and voluntarily then you are to disregard the statement made by the defendant.

4

Petitioner argues that the trial court's instruction was incomplete because it omitted the point that disregarding the statement is required, not because the statement may be false, but because the way it was extracted offends our way of enforcing criminal law.

We disagree. The trial court's instruction required a determination that the statement was given voluntarily, which includes the same determination sought by petitioner – that the statement was not the result of physical or mental coercion. In denying petitioner's proposed instruction, the court cited *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978), wherein this Court stated that "we approve of an instruction telling the jury to disregard the confession unless it finds that the State has proved by a preponderance of the evidence that it was made voluntarily." *Id.* at 472, 250 S.E.2d at 150. The instruction given covered the instruction proposed by petitioner; therefore, we see no error.

In his fifth assignment of error, petitioner argues that voir dire was inadequate as it resulted in a member of the F.O.P. being the foreman. The record reveals that there were no responses from the panel when the trial court asked if anyone knew the witnesses, including the two officers involved. There were also no responses when the court asked if any juror had any bias for or against the State.

> The object of jury selection is to secure jurors who are not only free from improper prejudice and bias, but who are also free from the suspicion of improper prejudice or bias. As far as is practicable in the selection of jurors, trial courts should strive to secure jurors who are not only free from prejudice or bias, but also are not even subject to any well-grounded suspicion of any prejudice or bias.

*State v. Schermerhorn*, 211 W.Va. 376, 380, 566 S.E.2d 263, 267 (2002) (citations omitted). In Syllabus Point 6 of *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983), this Court held:

> A prospective juror's . . . social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

In the present case, at the hearing on petitioner's motion for new trial, it was revealed that the juror in question was a member of the local sheriff's lodge, not the Huntington Police Department Lodge, to which the testifying officers belonged. There is no basis to doubt the veracity of the juror's negative response to whether he knew the officers involved, or whether he had a bias for or against the State.[3] Therefore, the court did not err with respect to the voir dire in petitioner's trial.

Sixth, petitioner contends that his trial counsel was ineffective. Specifically, petitioner

---

[3]This juror indicated that he went to grade school with petitioner's trial counsel when asked about his involvement with any of the lawyers in the case.

argues that (1) although his counsel drove to areas where petitioner had been on the day of the assault, he did not attempt to locate any witnesses to corroborate petitioner's story; (2) counsel did not obtain a roster of the petit jury panel in advance of trial to investigate potential jurors for bias and did not ask probing questions that would have revealed the above-mentioned juror's F.O.P. membership; (3) despite the testimony of the victim that she pepper-sprayed petitioner, counsel did not engage an expert to test petitioner's clothing to confirm the use of pepper spray; (4) counsel failed to document petitioner's bruised and battered condition, which would have bolstered his argument that his statement was coerced; and (5) counsel never moved to have petitioner evaluated to determine his competency to stand trial, despite the fact that petitioner could not read or write well, is low-functioning, and advised counsel that he did not understand much of the nature of the proceedings.

In Syllabus Points 5 and 6 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), we held as follows:

> 5. In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> 6. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Upon our review of the record, petitioner fails to establish that his counsel was ineffective under the *Strickland v. Washington* standard. Petitioner fails to identify any witnesses who would have been discovered had counsel's investigation been more thorough. Petitioner fails to explain how, short of a full-blown background investigation of each juror, the juror's F.O.P. membership would been discovered. Petitioner fails to address the fact that the juror was not in the same lodge as the testifying officers. With respect to the lack of an expert witness to confirm or reject the victim's use of pepper spray, there was no need for such testimony because an empty pepper spray can was found at the scene with liquid around the nozzle. Likewise, as to the lack of documentation of petitioner's injuries, it was not disputed that petitioner was kicked in his ribs at the scene as petitioner alleges. Finally, while petitioner may have difficulty reading and writing, such difficulty does not equate to lack of competency to stand trial.

Petitioner next argues that he received a disproportionate sentence as a result of the trial court erroneously stating at the sentencing hearing that petitioner had rejected a plea to one second degree sexual assault count in exchange for dismissal of the other charges. Petitioner states that he was never offered a deal to plead guilty to one count; rather, he was offered a plea

deal under which he would plead guilty to two counts. He concedes that he rejected that offer. However, petitioner contends that the trial court's misinformed belief that he refused a plea to one count colored its decision to run the sentences consecutively.

Respondent correctly notes, and petitioner concedes, that this issue was not raised in petitioner's petition for writ of habeas corpus.[4] Nevertheless, petitioner was sentenced within the statutory parameters for his convictions and failed to raise this issue in his habeas petition. As respondent notes in his brief, the sentencing transcript was available before petitioner filed his habeas petition; therefore, there is no reason why the issue could not have been raised in the petition.

Petitioner's last assignment of error is that the habeas court erred by denying his petition without a hearing. We disagree. We have held that

> [a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). Petitioner's argument centers on his lack of opportunity to present testimony regarding his ineffective assistance of counsel claims. However, the record demonstrates no area of defense counsel's strategy or method of preparation that is objectively defective. We fail to see, and petitioner fails to identify, how questioning his trial counsel would ultimately lead to habeas relief. Therefore, the circuit court did not err by denying petitioner's habeas petition without a hearing.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 30, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[4]Petitioner claims that he discovered this issue after he filed the petition, and that he intended to raise it at the omnibus hearing, which was never held.