# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 15-1195**  (Berkeley County 14-F-191)

**Erin S. T.,**
**Defendant Below, Petitioner**

**FILED**

**November 18, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and defendant below Erin S. T.,[1] by counsel Kevin D. Mills and Shawn R. McDermott, appeals the November 13, 2015, order of the Circuit Court of Berkeley County that sentenced him to ten to twenty years confinement but ordered that such confinement be served on home incarceration with electronic monitoring. Petitioner's sentence followed his conviction of one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust. The State of West Virginia, by counsel Cheryl K. Saville, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 21, 2014, a grand jury returned a seven count indictment against petitioner accusing him of having an inappropriate sexual relationship with one of his students while he was a teacher at Hedgesville High School.[2] Count two of the indictment charged petitioner with sexual assault in the second degree, in violation of West Virginia Code § 61-8B-5(a)(2),[3] as

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2] Count one of the indictment, charging petitioner with one count of sexual assault in the second degree, was dismissed prior to trial.

[3] West Virginia Code § 61-8B-5(a)(2) provides:
(continued . . .)

1

follows:

> That ERIN [S. T.] on or between the __ day of August, 2013, and the __ day of December, 2013, in the County of Berkeley and the State of West Virginia did unlawfully, feloniously and intentionally engage in sexual intercourse or sexual intrusion with M.H., without her consent, the said ERIN [S. T.] (DOB 06/29/1983) being over the age of sixteen, to wit: 30, and M.H. (DOB 02/20/1998) then being a child under the age of sixteen, to wit: 15, and more than four years younger than ERIN [S. T.], and ERIN [S. T.] was not married to M.H., in violation of [West Virginia Code § 61-8B-5(a)(2)] against the peace and dignity of the State.

Count three charged petitioner with sexual assault by a parent, guardian, custodian, or person in a position of trust, in violation of West Virginia Code § 61-8D-5(a).[4] It alleged as follows:

> That ERIN [S. T.] on or between the __ day of August, 2013, and the __ day of December, 2013, in the County of Berkeley and State of West Virginia did unlawfully, intentionally and feloniously engage in or attempt to engage in sexual

---

> (a) A person is guilty of sexual assault in the third degree when:
> . . . .
> (2) The person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant.

[4] West Virginia Code § 61-8D-5(a) provides:

(a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.

2

intercourse, sexual intrusion or sexual contact with M.H., the said M.H. then being a minor child under the care, custody or control of the said ERIN [S. T.], her parent, guardian, custodian or other person in a position of trust in relation to the child, in violation of [West Virginia Code § 61-8D-5(a)] against the peace and dignity of the State.

Counts two and three were based upon the allegation that petitioner inserted his finger into the victim's vagina while the two were in his classroom.

Counts four through seven also charged petitioner with sexual assault by a parent, guardian, custodian, or person in a position of trust. The allegations therein were identical to the allegations set forth in count three with the exception of the dates during which the sexual acts were alleged to have occurred. Counts four through seven alleged that petitioner committed the sexual acts "on or between the __ day of August, 2013, and the __ day of February, 2014," and are based upon allegations that petitioner hugged, kissed, and groped the victim in the stairwell at school.

Prior to trial, petitioner moved to dismiss the indictment on the ground that it was insufficient, or in the alternative, for a bill of particulars. The circuit court denied petitioner's motion.

Petitioner also moved to suppress petitioner's statement made to police on the grounds that it was involuntary, violative of *Miranda*,[5] and surreptitiously recorded at petitioner's home without his consent, in violation of his constitutional right against unlawful search and seizure and West Virginia Code § 62-1F-2(a). Petitioner gave the statement after an officer contacted petitioner and his wife while they were on vacation and falsely advised them that their vehicle had been seen at the scene of a bank robbery. The officer met petitioner and his wife at their home and, after briefly speaking with them about their vehicle, began speaking with petitioner about the victim. Eventually, the officer asked petitioner questions about his relationship with the victim and revealed the accusations against him. Petitioner denied having any sexual contact with the victim and requested counsel; however, the recording indicates that, following petitioner's request for counsel, the officer continued to question petitioner about the victim. Petitioner's motion to suppress this statement in its entirety was denied. Although the circuit court ordered that that portion of petitioner's statement following petitioner's request for counsel be suppressed, the parties agree that petitioner requested that the entire statement be admitted at trial for strategic purposes.

At trial, the victim testified that she arrived at school at 7:20 a.m. each morning and immediately visited petitioner in his homeroom or in a stairwell. She testified that they engaged in kissing, hugging, and groping every morning between 7:20 a.m. and 7:40 a.m. and that, on one occasion, petitioner took down his pants and asked for oral sex. The victim testified that she declined to perform oral sex but that she "massaged" his penis instead. The victim further

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

testified that, on another occasion, petitioner digitally inserted his finger into her vagina. The State also presented numerous Facebook messages between petitioner and the victim.

In his defense, petitioner asserted that the victim's accusations were false and that they never engaged in any sexual contact. Petitioner presented as evidence a Skype conversation between the victim and her friend that occurred on February 15, 2014, in which the victim complained that petitioner had "ripped her heart out" that day by telling her that they could not talk anymore.[6] It is petitioner's contention that this evidence contradicted the victim's testimony on direct-examination that it was she who was trying to break off the relationship. Petitioner also presented numerous alibi witnesses consisting of students and teachers who testified that, every morning, they saw petitioner in his wife's classroom located on the other side of the school from where the victim alleged her daily morning rendezvous with petitioner occurred.

During jury deliberations, the jury asked for the definition of "attempt" and "intent." After consulting with counsel, the circuit court defined "attempt" and "intent" for the jury. The jury also asked: "1. Does [sic] charges 3-7 deal with the specific acts that supposedly occurred, groping, kissing, and rubbing in the classroom and stairwell? and 2. Does it deal with the attempt to engage in sexual intercourse via electronic information?" After consulting with counsel, the court responded,

> 1. Charges 3 through 7 pertain to the allegations made about sexual contact or sexual intrusion that are alleged to have occurred in the classroom and stairwell.
>
> 2. No. Charges 3 through 7 pertain to the allegations made about sexual contact or sexual intrusion that are alleged to have occurred in the classroom and stairwell."

The jury convicted petitioner on count three of the indictment and acquitted him of the remaining charges. Petitioner was sentenced to ten to twenty years confinement but such confinement was ordered to be served on home incarceration with electronic monitoring. This appeal followed.

In his first assignment of error, petitioner argues that the circuit court erred in failing to dismiss the indictment as insufficient and in violation of the constitutional prohibition against double jeopardy. Petitioner argues that the indictment lacked specificity as to what sexual acts he allegedly committed against the victim and, as a result, he was not put on notice as to the allegations against which he was defending at trial. Specifically, count two charged petitioner with engaging in "sexual intercourse or sexual intrusion," in violation of West Virginia Code § 61-8B-5(a)(2), while counts three through seven charged petitioner with engaging in or attempting to engage in "sexual intercourse, sexual intrusion, or sexual contact," in violation of West Virginia Code § 61-8D-5(a). Petitioner contends that these statutory provisions encompass numerous separate potential actions, all of which are illegal under these statutes, but none of which were alleged with any specificity in the indictment. Compounding the confusion,

---

[6] Counts three through seven alleged that the crimes took place between August of 2013 and February of 2014.

4

petitioner argues, is that the lack of specific dates and range of dates set forth in counts two and three (five months) and counts four through seven (seven months) precluded petitioner from "pars[ing] out whether the [alleged incidents] occurred on separate days, on the same day but by different methods, or on a combination of same days and separate days[,]" thereby confusing the jury and violating the constitutional prohibition against double jeopardy.

This Court has held that "'[g]enerally, the sufficiency of an indictment is reviewed *de novo.* An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations.' Syl. Pt. 2, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996)." Syl. Pt. 2, *State v. Chic-Colbert*, 231 W. Va. 749, 749 S.E.2d 642 (2013). Furthermore,

> [a]n indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.

Syl. Pt. 6, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999). Finally, "[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syl. Pt. 3, *State v. Hall*, 172 W. Va. 138, 304 S.E.2d 43 (1983). Thus, this Court must consider the indictment in terms of whether it provided petitioner with enough information to defend against the charges and whether it will bar future prosecution for the same offenses.

In evaluating the indictment at issue, it is clear that it substantially followed the language of the relevant statutes (West Virginia Code §§ 61-8B-5(a)(2) and 61-8D-5(a)); fully informed petitioner of the offenses with which he was charged (same); and enabled the court to determine the statutes upon which the charges were based (same). Furthermore, the relevant statutes were included in each count of the indictment. With respect to counts three through seven, they make clear that petitioner was being charged for sexual acts (as opposed to sexual exploitation) upon the victim, who is identified by her initials only but whose identity is not at issue.

With regard to petitioner's argument that the indictment was deficient because it lacked specific or definitive dates on which the alleged offenses purportedly occurred, we likewise find no error. Indeed, petitioner's argument is not novel. This Court previously rejected such an argument pursuant to West Virginia Code § 62-2-10, which provides, in relevant part, that "[n]o indictment or other accusation shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" In *State v. David D.W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003), the defendant was indicted on multiple counts of sexual abuse by a parent, guardian, or custodian. He argued that the indictment was deficient because it failed to include specific dates on which the alleged offenses were to have occurred. This Court concluded that

> [c]learly, time is not an element of the offenses with which the appellant was charged. Thus, there was no requirement that the indictment in this case specify

5

exactly when the alleged offenses occurred. Moreover, this Court has explained that "[a] conviction under an indictment charged, though the proof was at variance regarding immaterial dates, precludes a subsequent indictment on the exact same material facts contained in the original indictment."

*Id.* at 173, 588 S.E.2d at 162 (quoting *State ex rel. State v. Reed,* 204 W.Va. 520, 523, 524, 514 S.E.2d 171, 174, 175 (1999)). Accordingly, we find that the circuit court did not err in concluding that the indictment was sufficient and did not violate the prohibition against double jeopardy.

In a related argument, petitioner argues that the circuit court erred in denying his motion for a bill of particulars. Petitioner argues that, notwithstanding the circuit court's conclusion to the contrary, the State's discovery was not sufficient to put petitioner on notice of the charges against him. This Court has held that "[t]he denial of a motion for a bill of particulars rests in the sound discretion of the trial court and unless it appears that such discretion is abused the ruling of the trial court will not be disturbed." Syl. Pt. 4, *State v. Slie*, 158 W. Va. 672, 213 S.E.2d 109, (1975).

Petitioner contends that he was charged with multiple counts of the same offense—sexual abuse by a parent, guardian, custodian, or person in position of trust—yet these identically worded charges failed to include sufficient facts differentiating each count from the others. Petitioner argues that the fact that he was convicted of only a single count rendered the verdict inconsistent and was the result of the indictment's failure to specify "which particular acts pertained to which particular counts." Thus, petitioner argues, the circuit court should have granted his motion for a bill of particulars so that he could have prepared an adequate defense.

Based upon our review of the record, we find no error. The circuit court noted that the indictment followed the language of the statutes that petitioner was charged with violating; that the indictment was otherwise sufficient under our case law; that the victim had given four statements prior to trial, three of which were recorded and all of which were provided to petitioner; and that the victim had previously been subject to cross-examination by petitioner's counsel at a personal protection hearing. Given these facts, it is clear that petitioner was not precluded from preparing an adequate defense against the charges in the indictment. Therefore, we find that the circuit court did not abuse its discretion in denying petitioner's motion for a bill of particulars.

In his next assignment of error, petitioner argues that the generic nature of the charges in the indictment led to "a prejudicial variance between the evidence presented and the charges." Petitioner argues that "'[a] conviction based upon evidence that varies materially from the charge contained in the indictment cannot stand and must be reversed.'" Syl. Pt. 3, *State v. Corra*, 223 W.Va. 573, 678 S.E.2d 306 (2009) (quoting Syl. Pt. 3, *State v. Nicholson*, 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds by State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980)). Petitioner contends that the charges against him were based entirely upon "actual sexual contact" given the victim's multiple statements that petitioner groped, hugged, and kissed her and digitally penetrated her vagina. In light of this evidence, petitioner argues, his defense at trial was that no actual sexual contact occurred. On appeal, petitioner contends that, over his objection, the circuit court permitted the State's jury instruction "that instructed the jury that they

6

may return a verdict of guilty on Counts 3 through 7 if they found beyond a reasonable doubt that [petitioner] attempted sexual contact with the alleged victim." According to petitioner, this instruction was contrary to the evidence that demonstrated "actual, completed sexual contact."

As a threshold matter, we observe that petitioner's strong suggestion that, at the close of all the evidence, the State requested and was granted a separate jury instruction on attempted sexual abuse by a parent, guardian, custodian, or person in position of trust is misleading. Counts three through seven of the indictment alleged that petitioner violated West Virginia Code 61-8D-5(a) by alleging that petitioner "did unlawfully, intentionally, and feloniously *engage in or attempt to engage* in sexual intercourse, sexual intrusion, or *sexual contact with*" the victim. (Emphasis added). It has been previously established that counts three through seven substantially followed the language of West Virginia Code § 61-8D-5(a), which provides, in relevant part, that "[i]f any parent, guardian or custodian of or other person in a position of trust in relation to a child . . . *shall engage in or attempt to engage in* . . . sexual intercourse, sexual intrusion or *sexual contact with*, a child under his or her care, custody or control . . . then [he or she] . . . shall be guilty of a felony . . . ." *Id.* (Emphasis added). The record reveals that the jury instruction about which petitioner complains, likewise, followed this statutory language and, thus, followed the language of counts three through seven of the indictment,[7] and, further, that the evidence demonstrated that petitioner engaged in sexual contact with the victim. Clearly, therefore, there was no variance between the indictment, the evidence at trial, and the jury instruction and thus, any argument that petitioner was prejudiced is without merit.

Next, petitioner contends that the circuit court erred in overruling his objection to the above-described jury instruction because it was not supported by the evidence and was confusing to the jury. Petitioner relies on case law from other jurisdictions in arguing that it is error to give an attempt instruction where the only evidence demonstrates a completed crime, *see Southerland v. State,* 471 So.2d 522 (Ala. Crim. App. 1985); *State v. Van*, 543 S.W.2d 827 (Mo. Ct. App. 1976), or no crime at all. *See Brock v. State*, 954 So.2d 87 (Fla. Dist. Ct. App. 2007); *Franklin v. State*, 549 S.E.2d 794 (Ga. Ct. App. 2001). In this case, petitioner argues, the only evidence presented was of alleged sexual contact and intrusion, not attempted sexual contact or intrusion. Thus, the jury instruction described above—which provided that the jury could convict if the State proved that petitioner "engaged in or attempted to engage in, sexual intercourse, sexual intrusion or sexual contact with" the victim—was erroneously given.

We review the circuit court's ruling with regard to petitioner's objection to the jury instruction at issue under the following standard:

 A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in

---

[7] As previously noted, count three differs from count four through seven only with respect to the dates on which the crimes are alleged to have occurred.

formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). *See also State v. Bradshaw,* 193 W.Va. 519, 543, 457 S.E.2d 456, 480 (1995). Thus,

when an objection to a jury instruction involves the trial court's expression and formulation of the jury charge, this Court will review under an abuse of discretion standard. Therefore, we review jury instructions to determine whether, taken as a whole and in light of the evidence, they mislead the jury or state the law incorrectly to the prejudice of the objecting party. So long as they do not, we review the formulation of the instructions and the choice of language for an abuse of discretion. We will reverse only if the instructions are incorrect as a matter of law or capable of confusing and thereby misleading the jury.

*Guthrie*, 194 W. Va. at 671-72, 461 S.E.2d at 177-78.

Upon our review, we find no error. The cases upon which petitioner relies are not instructive as they address the issue of whether an instruction on the lesser included crime of attempt was proper when the evidence at trial was of a completed crime or no crime at all. In such cases, a lesser included attempt charge can be refused by the trial court if there is no evidence to support such a theory. In contrast, it is clear that attempted sexual intrusion, attempted sexual intercourse, and attempted sexual contact are not lesser included offenses of West Virginia Code § 61-8D-5(a), nor are they separate charges or separate theories. Rather, attempt is a substantive element of the statutory crime. The jury instruction regarding counts three through seven substantially followed the statutory language. In consideration of the foregoing, we conclude that the circuit court committed no error.

In his next assignment of error, petitioner argues that the circuit court erred in refusing the request by petitioner's counsel to have contact with two jurors following the verdict. According to petitioner, prior to sentencing, Juror R.C. contacted defense counsel after reading a newspaper article about the verdict. R.C. informed counsel that the jury had convicted petitioner based upon his internet communication with the victim rather than on any sexual contact or assault[8] and, further, that the jurors had all agreed that the State had failed to prove that any

---

[8] When the jury asked the circuit court for the definition of "attempt" during the course of its deliberations, the court responded that

"attempt" refers to an act which fails to accomplish the result which is prohibited by the law, but which unequivocally displays the Defendant's desire and purpose to do the prohibited act, some substantial step toward the prohibited act and presents the real and imminent threat of accomplishing the prohibited act.

(continued . . .)

sexual contact or assault had occurred. Juror R.C. further informed defense counsel that the jury had been confused by the jury instructions. Defense counsel thereafter disclosed the juror contact to the circuit court and the State[9] and requested the court's permission to obtain an affidavit from Juror R.C. or to have R.C. present testimony. The circuit court denied petitioner's motion. Subsequently, defense counsel was advised that a second juror, Juror P.M., was involved in a local news Facebook discussion group in which she advised discussion participants that petitioner was convicted of having an Internet relationship with the victim and that the State had failed to prove that he had had sex with the victim. Petitioner's request to have contact with Juror P.M. was also denied.

Under Rule 606(b)(1) of the West Virginia Rules of Evidence, an inquiry into the validity of a jury verdict is generally prohibited. Rule 606(b)(1) provides that

> [d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Although the rule includes exceptions to this general prohibition against juror contact— including evidence that "extraneous prejudicial information was improperly brought to the jury's attention," that "an outside influence was improperly brought to bear on any juror," or that "a mistake was made in entering the verdict on the verdict form"[10]—petitioner does not allege that any of these exceptions apply to this case. Rather, petitioner argues that the unsolicited information from Jurors R.C. and P.M. is evidence that the jury was confused by the indictment

_____

*Electronic communications, standing alone, are insufficient to constitute an "attempt."*

(Emphasis added).

[9] *See* W.Va. R. Prof. Conduct 3.5(c) (stating that "[a]fter conclusion of a trial, a lawyer, or an agent of a lawyer, shall not communicate or attempt to communicate with a member of the jury . . . about the trial, the jury's deliberations or verdict without first applying for and obtaining an order from the court. Notice of a request to communicate with a juror or alternate juror shall be given to all parties."); W. Va. Trial Ct. R., 4.09 (stating, in relevant part, that "[n]o party, nor his or her agent or attorney, shall communicate or attempt to communicate with any member of the jury . . . until that juror has been excused from further service for a particular term of court, without first applying for (with notice to all other parties) and obtaining an order allowing such communication. The application shall contain a description of the proposed contact, and an executed certificate by each person involved that no inappropriate contact will be made. The circuit court shall liberally grant the request.").

[10] *See* W. Va. R. Evid. 606(b)(2).

9

and jury instruction and that, as a result, petitioner's due process rights were violated.

This Court has held that "[a] jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." Syl. Pt. 1, *State v. Scotchel*, 168 W. Va. 545, 285 S.E.2d 384 (1981). With regard to petitioner's assertion that the confusion of two jurors about the law and evidence presented at trial, this Court has further held that "[o]rdinarily, a juror's claim that he was confused *over the law or evidence* and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict." *Id.* at 545, 285 S.E.2d at 385-86, syl. pt. 3. (Emphasis added).[11] Any alleged confusion by these jurors as to the jury instruction and/or the evidence they deemed sufficient to convict cuts to the heart of the deliberative process and is prohibited from the purview of the litigants, the public, and this Court. Thus, we conclude that the circuit court did not err in denying petitioner's requests for juror contact.

We next address petitioner's argument that the circuit court erred in denying his motion to suppress his statement to law enforcement on the ground that it violated his rights under *Miranda*, was involuntary, and violated his constitutional right against unlawful search and seizure.[12] Petitioner argues that the pretextual circumstances under which he spoke with police (i.e., the officer's false claim to petitioner and his wife that their vehicle had been involved in a bank robbery), and the fact that the officer refused to honor petitioner's request for counsel,

---

[11] This Court has explained that

[t]he reason traditionally advanced to preclude impeachment of the jury verdict based on what occurred during the jury's deliberations is primarily grounded on public policy protecting the privacy of the jurors. This policy prevents both litigants and the public from being able to gain access to the jury's deliberative process. Inherent in this proposition is the recognition that ensuring the privacy of the jury's deliberations will promote a full, frank and free discussion of all the issues submitted to the jury. It is also recognized that the very nature of the deliberative process, which requires the jurors to arrive at a unanimous verdict, must of necessity require accommodation of individual views. This process of accommodation should not be utilized as a means to attack the general verdict. The rule against impeachment of the verdict also serves to prevent litigants from attempting to influence or tamper with individual jurors after the verdict has been rendered. There is also recognition that limiting impeachment promotes finality of jury verdicts.

*Scotchel*, 168 W. Va. at 548, 285 S.E.2d at 387.

[12] In his statement to the officer, petitioner denied having any sexual contact with the victim. The State introduced the statement as evidence that petitioner tried to hide a relationship with the victim because, during his conversation with the officer, petitioner denied having recent Facebook contact with her even though the officer had in his possession recent Facebook text communication between petitioner and the victim.

arrived at petitioner's home with a protective order and a search warrant, and surreptitiously recorded the statement, all warranted a suppression of the statement.

We first address petitioner's contention that admission of the statement violated his rights under *Miranda* and was involuntary. Petitioner concedes that he was not under "formal arrest" upon the officer's arrival at his home and during questioning. Nonetheless, petitioner argues that he was not free to leave because the officer had "a search warrant . . . [and] safety protective order to serve and because the officer had gained entry into [petitioner's] home through subterfuge[.]" According to petitioner, the officer should have advised him of his right to remain silent and of his right to counsel. *See Bradshaw*, 193 W.Va. at 528, 457 S.E.2d at 465 (stating that, under *Miranda*, "'in order to protect a defendant's right against compelled self-incrimination under the Fifth Amendment, before police initiate custodial interrogation, they must advise a defendant that, in addition to other rights, he has the right to remain silent and the right to counsel.'" (quoting *Miranda*, 384 U.S. at 467-72)).

We find no error. Petitioner has failed to demonstrate that his statement was inadmissible because he was entitled to *Miranda* warnings before speaking with police. "'"Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, 171 W.Va. 639, [643,] 301 S.E.2d 596, 599, (1983).' Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)." Syl. Pt. 9, *State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d 675 (2009). This Court has stated that "[t]wo elements must be present before *Miranda* warnings are required: first, the person must be in custody, and, second, he or she must be interrogated." *State v. Honaker*, 193 W. Va. 51, 60, 454 S.E.2d 96, 105 (1994) (citing *Miranda*, 384 U.S. at 444 (defining custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way")). "[T]he question whether a person is in custody for purposes of *Miranda* requirements is answered by the objective circumstances of the interrogation. It does not depend on the subjective view of either the person interrogated or the officers who conduct the interrogation." *Honaker*, 193 W. Va. at 60-61, 454 S.E.2d at 105-06. The objective circumstances under which petitioner spoke with law enforcement do not lend to a finding that petitioner was in custody; petitioner himself conceded that he was neither under arrest nor in police custody when he spoke with the officer who came to his home. Though petitioner claims that he was not free to leave because the officer had a protective order and search warrant, it is undisputed that petitioner was not advised of either until after he requested counsel. Petitioner has thus failed to show that the circuit court abused its discretion in denying petitioner's motion to suppress his statement on the ground that his rights under *Miranda* were violated.

With regard to petitioner's argument that his statement should have been suppressed because it was involuntary, we likewise find no error. Petitioner argues that "the State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." *State v. Vance*, 162 W.Va. 467, 470, 250 S.E.2d 146, 149 (1978). Petitioner further argues that "[w]hether such a statement was voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances." *Bradshaw*, 193 W.Va. at 527, 457 S.E.2d at 464.

11

Petitioner argues that he cannot have voluntarily consented to giving a statement under the pretextual circumstances described herein particularly given that he immediately requested counsel when he learned the officer was investigating sexual abuse allegations by the victim. According to petitioner, the type of interrogation conducted by the officer in this case is inherently problematic because "in its very design[,] it is likely to elicit answers that are not thought out or responsive" and made it difficult for petitioner to change course from one crime (the purported theft of his vehicle) to another (the alleged sexual abuse of a student). We find this argument to be without merit. This Court has held that "[m]isrepresentations made to a defendant or other deceptive practices by police officers will not necessarily invalidate a confession unless they are shown to have affected its voluntariness or reliability." Syl. Pt. 6, *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706 (1988). Notwithstanding his general argument that the false premise upon which the officer met with petitioner confused him and affected his ability to form complete, coherent answers, petitioner fails to show that it, in fact, affected the voluntariness of his statement. As the circuit court concluded, petitioner knew "that the subject matter of the interview changed, and he continued to answer the officer's questions voluntarily." This Court has held that "'[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.' Syllabus Point 3, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978)." Syl. Pt. 7, *State v. Hickman,* 175 W.Va. 709, 338 S.E.2d 188 (1985). Based upon our review of the record, we conclude that the circuit court's ruling that petitioner's statement was voluntary was neither plainly wrong nor clearly against the weight of the evidence.

Next, we address petitioner's argument that his statement should have been suppressed because it was recorded surreptitiously by the officer at petitioner's home, without a court order, in violation of the constitutional prohibition against unlawful search and seizure. *See* U.S. Const. Art. IV; W.Va. Const. Art. III, § 6; W.Va. Code §§ 62-1F-1 through 62-1F-9. In syllabus point two, in part, of *State v. Mullens*, 221 W.Va. 70, 650 S.E.2d 169 (2007), this Court held:

> It is a violation of West Virginia Constitution article III, § 6 for the police to invade the privacy and sanctity of a person's home by employing an informant to surreptitiously use an electronic surveillance device to record matters occurring in that person's home without first obtaining a duly authorized court order pursuant to W. Va.Code § 62-1D-11 (1987) (Repl.Vol.2005).

*Id.*[13] Furthermore, "[e]lectronic interception by law enforcement authorities of a person's conduct or oral communications in his or her home is governed by W. Va.Code §§ 62–1F–1 to – 9." Syl. Pt. 2, *State v. Hoston*, 228 W. Va. 605, 723 S.E.2d 651 (2012). Pursuant to West Virginia Code § 62-1F-2(a), in pertinent part, "an investigative or law-enforcement officer shall, in accordance with this article, first obtain from a magistrate or a judge of a circuit court within the county wherein the non-consenting party's home is located an order authorizing said interception." *Id.* Petitioner argues that the secret recording of his conversation with the officer

---

[13] Following *Mullens*, the Legislature, in 2007, enacted West Virginia Code § 62-1F-1 through 9, "Electronic Interception of Person's Conduct or Oral Communications in Home by Law Enforcement."

12

occurred at his "home" as that term is defined in West Virginia Code § 62-1F-1(a)(2) and, thus, the resulting statement should have been suppressed. West Virginia Code § 62-1F-1(a)(2) defines "home" as "the residence of a nonconsenting party to an electronic interception, provided that access to the residence is not generally permitted to members of the public and the nonconsenting party has a reasonable expectation of privacy in the residence under the circumstances."

In this case, it is undisputed that none of the recorded conversation between petitioner and the officer occurred inside petitioner's residence. Rather, the entirety of the conversation took place outside of the residence, at some unclarified location in the environs of petitioner's driveway. The circuit court determined that the recording did not occur at petitioner's "home" as that term is defined by the statute. We find no error.

> [T]he ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. . . . Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

Syl. Pt. 2, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). On appeal, petitioner relies on the case of *Florida v. Jardines,* 133 S.Ct. 1409 (2013), which regards "the area 'immediately surrounding and associated with the home'—what our cases call the curtilage—as 'part of the home itself for Fourth Amendment purposes[,]'" *Id.* at 1414 (internal citation omitted). At issue in *Jardines* was "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of a home is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1413. In *Jardines*, the United States Supreme Court concluded that

> "[w]hile the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.' Here there is no doubt that the officers entered it: The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'"

*Id.* at 1415 (internal citations omitted).

Clearly, *Jardines* is distinguishable from the case sub judice. In this case, the precise location of the recorded conversation between the officer and petitioner and whether that location was intended to be included in West Virginia Code § 62-1F-1(a)(2)'s definition of "home" were not addressed at any length below. On appeal, petitioner states that the entire conversation occurred "on or about [petitioner's] front porch and the driveway area nearest to the house[,]" while the State claims that the conversation took place "in the middle of the driveway." Thus, based upon the facts and circumstances of this case, we find that the circuit court committed no error in concluding that the recording did not occur in petitioner's "home" and, thus, in denying petitioner's motion to suppress his statement.

Next, petitioner argues that the circuit court erred when it denied petitioner the opportunity to impeach the victim with Facebook photographs that she posted just prior to trial. Petitioner argues that the photos, which portray the victim in a manner that was vastly different "from the image she was attempting to create in the courtroom of a demure and innocent minor[,]" were important to his defense theory that she concocted the allegations of sexual contact after petitioner spurned advances that she had made towards him online. Petitioner argues that the circuit court's refusal to admit the photographs violated his Sixth Amendment right to confront the witnesses against him.

This Court has held that

> "[t]he extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice." Syl. pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956).

Syl., *State v. Wood*, 167 W. Va. 700, 280 S.E.2d 309 (1981). Likewise,

> "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds, State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 1, *State v. Calloway*, 207 W. Va. 43, 528 S.E.2d 490 (1999).

The State points out, and petitioner does not dispute, that defense counsel failed to disclose the photographs during discovery and, for that reason, the circuit court ordered the photographs excluded. However, the circuit court permitted defense counsel to cross-examine the victim regarding the contents of the photographs and the persona the defense argued the victim was attempting to create with them. We find no abuse of discretion by the circuit court in this regard.

In his final assignment of error, petitioner argues that the circuit court erred in admitting certain Facebook messages between petitioner and the victim that he claims were unrelated to the charges of sexual abuse. Petitioner argues that the messages were exchanged between the victim as the persona "Emerald Lee" and petitioner as "Alonso Ramirez" in the context of a role-playing fantasy game related to a club at school and that the admission of these messages at trial was unfairly prejudicial to petitioner.

On appeal, petitioner concedes that defense counsel failed to object to the admission of this evidence at the time it was presented and, in a footnote, states simply that "this Court would review under a plain error standard." However, petitioner fails to make any further argument in favor of plain error or to adequately brief the issue for our review. This Court has repeatedly cautioned that, in the absence of supporting authority, we will not further review alleged errors that have not been adequately briefed. *See State v. Allen,* 208 W.Va. 144, 162, 539 S.E.2d 87,

14

105 (1999). Furthermore, this Court has adhered to the rule that "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). *Accord State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (noting that "appellate courts frequently refuse to address issues that appellants . . . fail to develop in their brief."). *See also Ohio Cellular RSA Ltd. P'ship v. Bd. of Pub. Works of West Virginia,* 198 W.Va. 416, 424 n. 11, 481 S.E.2d 722, 730 n. 11 (1996) (refusing to address issue on appeal that had not been adequately briefed). Accordingly, we decline to address this assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 18, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II